## BENNET *vs.* BENNET.

At common law the father, in the first instance, is entitled to the custody of his children, but courts will exercise a sound discretion for the benefit of the children in disposing of their custody.

The act of the 20th of March, 1860, has materially altered the rule of the common law, and has, to a certain extent, deprived the court of this exercise of its discretion in disposing of the custody of children. By this act the custody of the children within the age of seven years is transferred from the father to the mother.

This act is not unconstitutional, nor is it void as being incompatible with the fundamental principles of government.

———

The petition for the writ of *habeas corpus* in this case was filed on the 28th of March, 1860. The petitioner represents that she is a married woman, the mother of two infant children of tender years, *viz.* a daughter, who completed her fourth year in July, 1859, and a son, who completed his third year in January, 1860. That the father, in January last, left his residence, taking with him the child of a former marriage and the two children of the petitioner, and has since resided separate from the petitioner, detaining her children from her care and custody, doing violence to the feelings and affections of the mother and to the injury of the present welfare and future good of the children. The writ issued returnable on the 3d of April last.

The time for the return of the writ having been extended beyond the return day by consent of parties, and the production of the bodies of said infants having been dispensed with by like consent until otherwise ordered by the court on the 25th of April, an order was made, on the application of the petitioner, that return be made to the writ, except so much of the same as requires the production of the bodies of said infants on the first day of May, upon four days' service of a copy of the order.

The writ, with the answer of the defendant, was re-

turned and filed on the 5th of May. On the 15th of May, on the application of the petitioner, and with the assent of the defendant's counsel, leave was given to the petitioner to file an answer traversing the return, it being understood that the defendant would be at liberty to file a replication to the petitioner's answer. It was at the same time further ordered that, upon the answer being filed, both parties should have leave to take testimony to be used on the hearing of the cause, and that the same be brought to hearing on the 13th of June without further notice. The answer was filed on the day of the date of the order. Testimony was taken, on the part of the petitioner, between the 8th and the 16th of June. No replication was filed by the defendant to the answer of the petitioner made to the defendant's return nor was any evidence taken on the part of the defendant.

The hearing was postponed from time to time, by consent of counsel, until the third of July, when the cause was brought to hearing. Before the opening of the case the defendant's counsel applied for further time for taking testimony, which having been denied, the cause was argued July 3d, 1860.

*Dodd* and *Frelinghuysen*, for the petitioner.

*Bradley*, for the defendant.

THE CHANCELLOR. The petitioner, the mother of two infant children of tender years, asks the restoration of the children to her care and custody, from which they were taken by her husband, the father of the children. The husband and wife are living in a state of separation without being divorced. The children are both under the age of five years, and are now living with the father and under his control.

There is no question but that at the common law the father, in the first instance, is entitled to the custody of his children. Courts will, however, exercise a sound dis-

cretion for the benefit of the children in disposing of their custody. If the infants are within the age of nurture, or the father is manifestly unfit to have charge of them, they will be committed to the care of the mother; and when both parents are grossly ignorant, immoral, and unfit to be intrusted with the care and education of the children, the court may order them to be placed in the custody of a third person. In all these cases they act for the good of the children, to which the rights of the parents and their control over them are subordinate.

The act of the 20th of March, 1860, *Pamph. L.* 437, has materially altered the rule of the common law, and has, to a certain extent, deprived the court of the exercise of its discretion in disposing of the custody of the children. It provides that when the husband and wife shall live in a state of separation without being divorced, and shall have any minor child or children of the marriage, the court or judge before whom the children may be brought upon *habeas corpus*, if the children are under the age of seven years, shall make an order that they be delivered to and remain in the custody of the mother until they attain such age, unless said mother shall be of such character and habits as to render her an improper guardian for such children.

The case now under consideration falls directly within the provision of the statute. The husband and wife are living in a state of separation without being divorced. The children are under seven years of age. Under such circumstances the statute is imperative that the children shall be delivered to and remain in the custody of the mother. The court has no discretion to exercise. The right to the custody of the children is transferred by force of the statute from the father to the mother. That right the court are to enforce, unless the mother shall be of such character and habits as to render her an improper guardian for her children. That contingency must be proved to exist—it will not be presumed. As the law

stood before the passage of the act the father was entitled to the custody of the children, unless he was of such character and habits as rendered him an improper guardian for his children. By force of the act the mother, under the limitations specified in the statute, is entitled to the custody of the children, unless she shall be of such character and habits as to render her an improper guardian for her children. In either case the disqualification must be established by proof. The mere fact that the husband and wife are living in a state of separation raises no presumption against her. It is to that very condition—a separation between husband and wife—that the operation of the statute is in terms limited. Nor will the disqualification be established by evidence of the fact, that the separation was partially or even wholly the fault of the mother. The circumstances attending a separation between husband and wife may tend strongly to establish a character which would disqualify the wife from having the guardianship of her children. On the other hand, it is easy to conceive of a separation produced by a wife, who might nevertheless be a fond and devoted mother and a proper guardian for her children.

The court happily is not called upon to enter upon the details of the unhappy controversy between these parties nor to decide where the fault of the separation lies. There is nothing in the evidence, or even in the answer of the defendant himself, seriously to impeach the character or habits of the petitioner as a proper guardian for her children. The burthen of proof is on the defendant, and he has utterly failed, nay, he has not attempted to establish the fact upon which his denial of the petitioner's right depends. He claims, by his answer, that he is entitled to the custody of his children, and that he has never forfeited his right to the same, whereas the statute declares that the mother is entitled to their custody, and the only question is whether she has forfeited her right. The answer is consequently a defence of his own supposed

right rather than an impeachment of that of his wife. The fact is doubtless accounted for by the circumstance suggested on the argument, that at the time of the preparation of the answer the existence of the statute was unknown to the defendant or his counsel.

If the statute is valid, it is clear that the court is bound to order the children to be delivered to the custody of the mother.

It is argued that the statute is unconstitutional, being in violation of the vested rights of the husband. The statute does not impair the obligation of any contract, and is not unconstitutional on that ground. Nor is it suggested that there is any other clause of the constitution with which it conflicts. But it is urged that it is in violation of the fundamental principles of government, an infringement of the rights of private property, for the protection of which government was instituted, and is therefore void.

The argument proceeds on the assumption that the parent has the same right of property in the child that he has in his horse, or that the master has in his slave, and that the transfer of the custody of the child from the father to the mother is an invasion of the father's right of property. The father has no such right. He has no property whatever in his children. The law imposes upon him, for the good of society and for the welfare of the child, certain specified duties. By the laws of nature and of society he owes the child protection, maintenance, and education. In return for the discharge of those duties, and to aid in their performance, the law confers on the father a qualified right to the services of the child. But of what value, as a matter of property, are the services of a child under seven years of age? But whatever may be their value, the domestic relations and the relative rights of parent and child are all under the control and regulation of municipal laws. They may and must declare how far the rights and control of the parent shall extend over

the child, how they shall be exercised, and where they shall terminate. They have determined at what age the right of the parent to the services of the child shall cease and what shall be an emancipation from his control.